Moncure, P.,
delivered the opinion of the court.
The court is of opinion that the circuit court did not err in overruling the demurrer to the second and third counts of the declaration. The court ought, also, to have overruled the demurrer to the whole declaration and the first count thereof. But the error of the court in that respect is not an error to the prejudice of the plaintiff in error; of which, therefore, he cannot complain. The supposed error in the second and third counts of the declaration consists, in treating the bond therein mentioned, in which no denomination of money is specifically mentioned, as being a bond for so the *682 “dollars,” was intended by the parties to be, and ought to have been, inserted in the bond, after the number “seven hundred and seventy-six,” but was-omitted therein; and that the true and proper legal construction of the bond is, that it is a bond for so many dollars. We think that the court was right in that construction, and it is a bond in the penal sum of $776. It was certainly intended to be, and was, a bond for so much money of some kind? How, of' what kind ? Gan there be a doubt on that subject? Does not the whole bond, including both the penal part and the condition, conclusively show that “dollars,” and only “dollars” was the denomination of the money for which it was given ? The bond was given for “lawful money of Virginia.” What is the plain meaning of the description, even standing by itself? Certainly “dollars.” The Code, ch. 137, §§ 1 and 2, p. 976, declares that: § 1. “The money of account of this state shall be, the dollar, cent, and mill; all accounts by public officers shall be so kept;” and, § 2. “Ho writing shall be invalid, nor the force of any account or entry be impaired, because a sum of money is expressed therein otherwise than in the said money of account.” The-condition is expressly for dollars, which conclusively shows, in the absence of evidence to the contrary,, that the penal part is for dollars; the amount being,, as is usual, about double the amount mentioned in the condition. Hothing is more common than the omission of words, and even most important words, in drawing written instruments; and yet those words, can, generally, be as well understood from the context of the instrument as if they were expressed in it, and' the instrument is construed accordingly. It would be-a great defect in the law if this were not so. It will *683 hardly be contended, and perhaps in the argument was not contended, that the law is not so in regard to the construction of ordinary contracts in writing between man and man. But it seemed to be supposed that a different rule of construction applies to records; in which it seemed to be contended that an omitted word, however plainly implied by the context of the instrument, cannot be supplied by construction. In this we think the learned counsel were plainly in error; and that a record, and even a statute, is governed by the same rule of construction in this respect as other written instruments. All are liable to mistakes; as well courts and legislatures as men of business; and in construing the written instruments of all, the business of a court of construction is, to ascertain from the instrument the intention of its framers. A court or a legislature is more deliberate in framing its acts than men engaged in business, and it is therefore supposed to make fewer mistakes in its language. But it sometimes makes them; and then its acts must be subjected to the legal rules of construction for the purpose of ascertaining the intention, if that can be done. It is not admitted that the bond in question in this case was a record, or anything more than a contract inter partes. We do not intend to decide that question, because we do not deem it material. Bor whether it be a record, or in the nature of a record, or not, the word dollars must be understood and applied as aforesaid, in its. construction.
The court is further of opinion that the circuit court did not err in overruling the motion of the defendant to exclude the said bond from being read as evidence on the trial of the cause, because of the supposed variance between the bond offered in evidence and the bond described in the declaration.
*684 There was, in fact, no such variance. The bond offered in evidence was the same in legal construction and effect as the bond described in the declaration, as has already been fully shown. There was no necessity, even if it were competent, to offer testimony as to what was meant thereby. The meaning sufficiently, and indeed conclusively, appears from the bond itself. The bond was not required by law to be executed in the presence of the court, but to be given before the clerk of the court in which the judgment was. Code, p. 1128, § 10. Though its being given before the court, if it so was, cannot vitiate it. And even if it were not in fact taken before the court, though certified by the clerk at the foot of it so to have been, the bond would not thereby be vitiated, if in fact given before the clerk; as it was. But that the court did not sit on the day of the date of the bond, does not show that it was not executed in the presence of the court, especially when the clerk has certified that it was so executed. It may have been misdated; or executed on a day different from that on which it bears date.
The bond was not taken without authority of law. It was argued that it was, because the endorsement made by the judge, granting the injunction directed to the clerk, says: “Injunction granted on the usual terms,” without stating upon what terms it was to become operative. The statute does not require that the terms upon which the injunction is granted shall be stated in the order directed to the clerk. It certainly does not require that all the terms shall be stated in the order; but only, if any, that the penalty of the bond shall be stated in the order. All the other terms and conditions' of the bond are prescribed by the statute, and need not be, and rarely ever are, repeated *685 in the order. To grant an injunction to a judgment “ on the usual terms,” is to grant it on the terms of giving a bond with condition as prescribed by law. The bond in this case is conditioned according to law, and so in that respect conforms to the usual terms. But the amount of the penalty was not fixed by the direction of the judge who awarded it, and it seems to be therefore supposed by the learned counsel that the bond is void. How is that so? We think not. The penalty of an injunction bond, where the injunction is to a judgment, is generally about double the amount of the judgment; and independently of any direction to the court in the statute to fix the penalty, a grant of an injunction on the usual terms would be understood to contemplate a bond in a penalty abqut double the amount of the judgment. Formerly nothing was said in the statute about the amount of the penalty of the injunction bond. And probably nothing would ever have been said in the statute about the amount of such penalty if judgments alone had been the subject of an injunction. But as the statute embraces many other subjects of injunction, which, in themselves, afford no guide to the clerk in fixing the penalty of the bond, it therefore provides that the bond, in cases of injunction, all of which are embraced in the same section, shall be in such penalty as the court or judge awarding it may direct. In this case the injunction was to a judgment, and was granted on the usual terms, and a bond was taken in a penalty about double the amount of the judgment. Was not this a compliance with the order? and did not the order comply with the law? Without deciding that question, we are of opinion that the obligors to the bond are estopped from denying that the penalty of the bond conformed to the direction of the judge who awarded the injunc *686 tion. .But it appears that the bond was executed in the presence of the court, which thereby received and sanctioned the bond, including the penalty. And this had at least as much effect in fixing the penalty of the bond as if the amount of it had been prescribed in the order awarding the injunction.
The court is further of opinion, that the circuit court did not err “ on the motion of the defendant,” in the words of the third assignment of error, “to continue the cause, after having proved the absence of a material witness and his inability to go to trial in such absence. The court had no power to compel him to disclose what he expected to prove by such witness, and then to determine that what was proven was inadmissible and irrelevant, and the witness incompetent.”
In Hewitt’s case, 17 Gratt. 627, cited by the counsel for the defendant in error, it was held by this court that “a motion for a continuance is addressed to the sound discretion of the court under all the circumstances of the case; and although an appellate court will supervise the action of an inferior court on such a motion, it will not reverse a judgment on that ground, unless such action was plainly erroneous;” and that “where the circumstances satisfy the court that the real purpose in moving for a continuance is to delay or evade a trial, and not to prepare for it, then though ihe witnesses have been summoned, and the party has sworn to their materiality, and that he cannot safely go to trial without them, the continuance should be refused.”
On the principles'above mentioned, we certainly cannot say that the action of the court in regard to the motion for a continuance was plainly erroneous. It was a ease in which the court might very properly, as it did, require the defendant, William H. Harman, to *687 disclose the facts he expected to prove by James W. Harman. The witness, who was the principal debtor, had been summoned as a witness for the defendant at the previous term of the court, when the case was continued on the motion of the defendant on account of the absence of the said witness, against whom a rule was awarded, returnable to the next court, when he was again absent, though his absence was then accounted for by the testimony of a witness that there was a dangerous disease prevailing in his family a few days before. The defendant disclosed the following as the facts which he expected to prove by said witness, viz: “that when the defendant, Wm. H. Harman, signed the said injunction bond, it was understood between said Wm. H. Harman and James W. Harman that John Henderson would also sign the said bond as one of the securities, and that defendant, Wm. H. Harman, signed said bond upon the express condition and understanding that said Henderson would sign it, and this fact was announced to the clerk, James W. English, at the time it was signed by said Wm. H. Harman, the defendant; but William H. Howe, the plaintiff, knew nothing of such agreement or understanding.” If James W. Harman would have been an inadmissible witness in the case to that transaction, being one of the parties to the bond, and said English, the clerk, before whom it was acknowledged being dead, then of course it would have been improper to continue the cause on account of the absence of said witness. But we deem it unnecessary to decide whether said witness would have been admissible or not for that purpose, as we are of opinion that even if the fact which the defendant stated he expected to prove by the witness had been before the court on the trial of the cause, it would not have affected the result. *688 The bond is an official bond, executed before the clerk of the court and in the presence of the court. The obligors having signed, sealed and acknowledged it in the presence of the court, and it having been accepted and acted on as their bond, they are now estopped from denying it. The mere fact that it has two blank seals annexed to it does not invalidate the bond. Nothing is more common in the execution of a bond of that kind that blank seals are left to it. They are generally put there in order that sufficient names may be gotten to them to satisfy the court or officer taking the bond that the security is sufficient; and when it is sufficient, the parties signing it acknowledge it before such court or officer by whom it is accepted, and the obligors are then estopped from denying it. Whatever understanding there may be between the obligors to the bond or any of them as to its being signed by others, that cannot affect the validity of the bond, if neither the obligee nor the court in which it was executed consents to such an understanding or has any. notice of it. The obligors know, or are presumed to know, that the bond is intended to be acted on as their bond so soon as it is acknowledged and accepted as aforesaid, and that the court or officer before which it is executed and acknowledged cannot be expected or bound to become the agents of any of the persons who have executed or acknowledged it, in procuring it to be executed and acknowledged by other persons. It is not pretended that there was, in this case, any understanding with the plaintiff' or the court, even if we can suppose that there could have been such an understanding under any circumstances, that the obligation of the surety to the bond was to be conditional only, and to depend upon another person’s becoming surety. It is stated by the defendant that *689 “this fact was announced to the clerk, James W. English, at the time the bond was signed by William U. Harman, the defendant;” but it is further stated “ Wm. H. Howe, the plaintiff, knew nothing of such agreement or understanding.” Without referring again to the authorities cited by the counsel for the plaintiff in error, to show that, according to the statement of what the said plaintiff expected to prove by the witness, he was not bound by the said bond, it is enough for us to say that we do not hold that any or all of them sustain that proposition.
We are therefore of opinion that there is no error in the judgment, at least to the prejudice of the plaintiff in error, and that it ought to be affirmed.
Judgment arrirmed.